## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAHARLA WILLIAMS<br>4506 Shetland Way<br>Westville, NJ 08093<br><br>    Plaintiff,<br><br>  v.<br><br>THE DEVEREUX FOUNDATION<br>d/b/a DEVEREUX ADVANCED<br>BEHAVIORAL HEALTH<br>444 Devereux Drive<br>Villanova, PA 19085<br><br>    Defendant. | CIVIL ACTION<br><br>No.<br><br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. This action has been initiated by Laharla Williams (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against The Devereux Foundation for violations of the New Jersey Law Against Discrimination ("NJ LAD") and New Jersey common law.[1] As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

### JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1332 because complete diversity jurisdiction exists.

---

[1] Plaintiff has also filed claims arising under the Americans with Disabilities Act, as amended, with the EEOC. Once her administrative remedies as to those claims are exhausted, she will amend her Complaint to include her ADA claims.

3. Plaintiff is a resident and citizen of New Jersey at the above-captioned address.

4. Defendant is organized in Pennsylvania, and its corporate headquarters and principal place of business is nationally identified as the above-captioned address. Defendant is thus a citizen of Pennsylvania.

5. Furthermore, Plaintiff was terminated from her employment and seeks past lost wages, future lost wages, emotional distress damages, punitive damages, and an anticipated legal-fee petition - - which exceeds $75,000.00, exclusive of costs and interest.

6. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

7. Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendant conducts a vast amount of business in this judicial District, and the transactions and occurrences underlying the lawsuit herein occurred in this District.

## PARTIES

8. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

9. Plaintiff is an adult individual, with an address as set forth in the caption.

10. Defendant, as stated *supra*, is headquartered and organized in Pennsylvania. Defendant operates nationally, including numerous facilities throughout New Jersey (one of where they employed Plaintiff), and is one of the nation's largest nonprofit organizations providing services, insight and leadership in behavioral healthcare.

11.     At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

12.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13.     On or about October 2, 2023, Defendant hired Plaintiff as a full-time Direct Support Professional ("DSP") and employed her in that capacity at their Williamstown, NJ group-home facility, until unlawfully terminating her on or about April 26, 2024, as discussed herein.

14.     In her role as a DSP, Plaintiff was responsible for providing care and support to Defendant's patients, many of whom suffer from behavioral health issues.

15.     Throughout her employment, Plaintiff was a dedicated employee, providing exceptional care to her patients with no history of progressive discipline or performance related issues.

16.     On or about April 5, 2024, Plaintiff was accompanying Defendant's clients, along with another member of Defendant's staff, on a routine outing.

17.     While en route back to Defendant's group-home facility, the group stopped at a fast-food restaurant to purchase the clients dinner.

18.     One of the clients, John Doe ("Doe")[2], became angry and volatile when he was not allowed to exit the vehicle (which was still in operation and in the drive through lane).

19.     Plaintiff tried to deescalate the situation and redirect Doe's anger to calm him down.

---

[2] The identity of this patient is known to the Parties but is not disclosed herein for privacy considerations of a non-party.

20. Instead, Doe began to curse, stated "Fuck it! I don't want it," and became increasingly hostile.

21. After Defendant's staff confirmed Doe no longer wanted fast-food, Plaintiff asked the driver to take everyone back to Defendant's group-home, but a few minutes down the road, Doe tried to jump out of the van, which prompted Plaintiff to lock the doors.

22. Doe then violently and physically attacked Plaintiff, striking her (and others in the van) repeatedly.

23. In shock and desperate to protect herself and the other individuals in the van, Plaintiff directed the other staff-member to call 9-1-1.

24. Monroe Township Police Department and paramedics responded to the 9-1-1 call, but no criminal charges were filed against Doe because he "suffer[s] from mental health disorders and are not aware of their (sic) actions."

25. Plaintiff was evaluated by paramedics but declined immediate transport to the hospital, instead choosing to assist in returning the clients to Defendant's group-home.

26. Once Plaintiff returned to the group-home, she notified her manager of the incident, retrieved the necessary paperwork, and was taken to the hospital for treatment, as it was clear Plaintiff suffered serious injuries including spinal, orthopedic, and neurological injuries.

27. These injuries are chronic in nature, and at times, substantially limit Plaintiff from performing daily life activities such as thinking, lifting, standing, walking, and using her extremities without pain.

28. As a result, Plaintiff required reasonable accommodations in the form of intermittent medical leave, after she was placed out of work by the treating physicians on or about April 5, 2024.

29. Plaintiff also completed and submitted paperwork to initiate a workers compensation claim.

30. However, before Plaintiff was able to return to work, and just days after Plaintiff's initiated a workers compensation claim, Defendant's management notified Plaintiff that she was being suspended on or about April 9, 2024.

31. On or about April 17, 2024, Defendant denied Plaintiff's Workers Compensation claim citing, inter alia, that it was "without sufficient additional information addressing the allegations of the petition . . . ."

32. On or about April 19, 2024, Plaintiff sought continued treatment as a result of her aforementioned disabilities and injuries she sustained from this attack.

33. Just a few days later, on or about April 26, 2024, Defendant's management terminated Plaintiff's employment, falsely stating that she had started the altercation (in which she was attacked) and had allegedly violated Defendant's policies.

**COUNT I**
**Violations of the New Jersey Law against Discrimination ("NJ LAD")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Failure to Accommodate)**

34. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

35. Plaintiff has and continues to suffer from her aforementioned qualifying disabilities under the NJ LAD, specifically those stemming from chronic injuries resulting from the April 5, 2024 attack, which left her with spine, back, orthopedic, and neurological medical conditions that, at times, substantially limit her ability to perform daily life activities.

36. Defendant's management was specifically aware of Plaintiff's health condition(s) and need for as short medical leave as of April 5, 2024 (a reasonable accommodation under the ADA).

37. Instead of accommodating Plaintiff's need for short term medical leave, Defendant suspended and then terminated Plaintiff (likely to avoid having to continue accommodating her).

38. Plaintiff's aforementioned actual/perceived, or record of, disabilities and/or her engagement in protected activities (requesting and/or taking medical leave) were a motivating and/or determinative factor in Defendant's decision to suspend and terminate Plaintiff.

39. Defendant's actions as aforesaid constitute unlawful discrimination, denial of a reasonable accommodation, and retaliation in violation of the NJ LAD.

## COUNT II
### Wrongful Termination
### (Public Policy Violation)

40. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

41. Upon information and belief, Plaintiff was terminated in substantial part for making a claim for worker's compensation benefits against Defendant and/or for her work-related injuries.

42. It is against New Jersey's public policy for an employee to be terminated for making a worker's compensation claim. *See e.g., Stewart v. County of Hudson*, 2011 N.J. Super. Unpub. LEXIS 1965, 34 (App. Div. July 22, 2011).

43. N.J.S.A. 34:15-39.1 provides, inter alia, that it "shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim workmen's compensation benefits from such employer. . .."

44. The mere temporal proximity between Plaintiff's claim for worker's compensation and her termination creates an inference that her termination was in retaliation for making such a claim.

45. Further, Defendant's proffered reasons for terminating Plaintiff are demonstrably false and indicative of pretext.

46. These actions as aforesaid constitute wrongful termination in New Jersey.

47. Defendants' termination of Plaintiff therefore constitutes a violation of the State of New Jersey's common law protections.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E. Plaintiff is to be given a trial by jury.

                    Respectfully submitted,

                    **KARPF, KARPF & CERUTTI, P.C.**

By: _____
                    Ari R. Karpf, Esq.
                    8 Interplex Drive, Suite 210
                    Feasterville-Trevose, PA 19053
                    (215) 639-0801

Dated: December 5, 2024